IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOY PATRICIA ANDERSON,<br>Individually and as Personal Representative of<br>the Estate of Victoria Mary Kong, deceased,<br>8 Autumn Hill Way<br>Gaithersburg, MD 20877;<br><br>Lynn Carol Ransome<br>4622 Hawksbury Road<br>Pikesville, MD 21208;<br><br>Dianne Mary Kong<br>1st Avenue Bayswater<br>Deacons Road<br>St. Michael, Barbados;<br><br>and<br><br>Cullen John Kong<br>1st Avenue Bayswater<br>Deacons Road<br>St. Michael, Barbados,<br><br>      Plaintiffs,<br> v.<br><br>AMERICAN AIRLINES, INC.<br>4333 Amon Carter Blvd., MD 5657<br>Fort Worth, Texas 76155<br>SERVE: The Corporation Trust Company Inc.<br>    351 West Camden Street<br>    Baltimore, MD 21201;<br><br>and<br><br>**EULEN AMERICA, INC.**<br>7200 Corporate Center Drive, No. 206 | Civil Action No.<br><br>**COMPLAINT AND JURY DEMAND** |

Miami, Florida 33126
SERVE: Corporate Creations Network, Inc.
11380 Prosperity Farms Road, #221E
Palm Beach, FL 33410,

                Defendants.

Plaintiffs JOY PATRICIA ANDERSON, Individually and as PERSONAL REPRESENTATIVE OF THE ESTATE OF VICTORIA MARY KONG, deceased, LYNN CAROL RANSOME, DIANNE MARY KONG and CULLEN JOHN KONG, by and through their attorneys, Martin & Gitner PLLC and Kreindler & Kreindler LLP, respectfully allege as follows:

### THE PARTIES AND JURISDICTION

1. This action seeks damages on behalf of plaintiffs, the heirs and next of kin of Victoria Mary Kong and the Estate of Victoria Mary Kong for the personal injuries and wrongful death of Victoria Mary Kong, who died on May 4, 2013 as a result of an accident, under the Montreal Convention Treaty, that she suffered while disembarking from American Airlines Flight 1094 on May 3, 2013.

2. Plaintiff Joy Patricia Anderson ("Ms. Anderson") is a citizen of the State of Maryland and the daughter of decedent Victoria Mary Kong ("Mrs. Kong") and was appointed the duly authorized Personal Representative of the Estate of Victoria Mary Kong by the Register of Wills for Montgomery County, Maryland on September 4, 2013. She brings this action in both her individual and representative capacities.

3. Plaintiff Lynn Carol Ransome is a citizen of the State of Maryland and the daughter of decedent Victoria Mary Kong. She brings this action in her individual capacity.

4. Plaintiff Dianne Mary Kong is a citizen of Barbados and the daughter of decedent Victoria Mary Kong. She brings this action in her individual capacity.

5. Plaintiff Cullen John Kong is a citizen of Barbados and the son of decedent Victoria Mary Kong. He brings this action in his individual capacity.

6. Plaintiffs' decedent Victoria Mary Kong was a citizen of the State of Maryland.

7. Defendant American Airlines, Inc. ("American Airlines") is a corporation duly organized and existing under the laws of Delaware with its principal place of business in Texas. Defendant American Airlines is a common carrier engaged in the business of transporting passengers by air and conducts substantial business in the State of Maryland and within this District.

8. Defendant Eulen America, Inc. ("Eulen America") is a corporation duly organized and existing under the laws of Florida with its principal place of business in Florida. Defendant Eulen America is engaged in the business of providing airport services including airport wheelchair assistance services and conducts substantial business in the State of Maryland and within this District.

9. Plaintiffs' decedent Victoria Mary Kong was injured while traveling as a fare paying passenger on American Airlines Flight 1094 on May 3, 2013, under a contract of carriage purchased in the United States.

10. Jurisdiction exists pursuant to 28 U.S.C. § 1331, by reason of a federal question concerning the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on November 4, 2003), reprinted in S. Treaty Doc. No. 106-45 (the "Montreal Convention"), in that this action arises out of injuries sustained by a passenger on board an air carrier engaged in international transportation by an aircraft for hire; the ticket

contract between the passenger and the air carrier was purchased in the United States in the State of Maryland; the final place of destination, according to said ticket contract, was in the United States in the State of Virginia; and the principal and permanent residence of the representative plaintiff and plaintiffs' decedent is in the United States in the State of Maryland, where defendant American Airlines operates services for the carriage of passengers by air and maintains facilities related to its business of carriage of passengers by air; and pursuant to 28 U.S.C. § 1332 diversity of citizenship in that the plaintiff is a citizen and resident of Maryland, defendant American Airlines is a Delaware corporation with its principal place of business in Texas, defendant Eulen America is a Florida corporation with its principal place of business in Florida, and the amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, exclusive of interest and costs.

11. Personal jurisdiction is proper in this District because defendant American Airlines is qualified to do business in the State of Maryland, operates its aircraft from Baltimore/Washington International Airport in this District, and has been doing continuous and systematic business in the State of Maryland and within this District.

12. This Court also has supplemental jurisdiction, pursuant to 28 U.S.C. §1367, with respect to the claims against defendant Eulen America in that those claims form part of the same case or controversy.

13. Venue in the District satisfies the requirements of 28 U.S.C. § 1391, in that, as set forth above, defendant American Airlines conducts substantial business in and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

14. Victoria Mary Kong was 83 years old and in good health. She lived with plaintiff Joy Patricia Anderson in Maryland.

15. Despite her age, Mrs. Kong lived an active life and maintained close relationships with her children and grandchildren. Mrs. Kong regularly travelled to Barbados to visit and stay with her son, Cullen John Kong, and her daughter, Dianne Mary Kong, and had travelled there during March and April 2013.

16. On April 14, 2013, Ms. Anderson purchased Mrs. Kong's May 3, 2013 return airline ticket for travel on American Airlines from Bridgetown, Barbados to Ronald Reagan Washington National Airport in Arlington, Virginia ("National Airport"), with a stopover at Miami International Airport in Miami, Florida. Ms. Anderson purchased Mrs. Kong's ticket on American Airline's website, *aa.com*.

17. When purchasing the ticket, Ms. Anderson used the "special services request" menu on the website and requested that American Airlines provide wheelchair assistance for Mrs. Kong through Miami International Airport to Mrs. Kong's connecting flight to National Airport and again from the National Airport gate to American Airlines' baggage claim area in National Airport ("American Airlines' Baggage Claim Area"). As was the custom of Ms. Anderson and Mrs. Kong on prior trips, Ms. Anderson planned to meet her mother and the wheelchair attendant in American Airlines' Baggage Claim Area and from that point forward Ms. Anderson would assume care of her mother.

18. On May 2, 2013, the day before Mrs. Kong's flight, an American Airlines Representative called Ms. Anderson to confirm the need for wheelchair assistance for Mrs. Kong. During that phone call, Ms. Anderson informed the American Airlines Representative

5

that Mrs. Kong, "sometimes gets confused." The representative acknowledged the request for wheel chair transportation for Mrs. Kong from the National Airport gate to American Airlines' Baggage Claim Area.

19. On May 3, 2013, Mrs. Kong flew from Bridgetown, Barbados to Miami, Florida, and then on her connecting flight, American Airlines flight 1094, to National Airport.

20. Mrs. Kong's layover at Miami International Airport was uneventful and Mrs. Kong boarded the aircraft used for American Airlines Flight 1094 from Miami to National Airport. American Airlines Flight 1094 was scheduled to arrive at National Airport at 3:40 p.m. on May 3, 2013.

21. At approximately 3:35 p.m., Ms. Anderson arrived at American Airlines' Baggage Claim Area to meet Mrs. Kong.

22. Twenty-three minutes later, at approximately 3:55 p.m., Mrs. Kong had not arrived at American Airlines' Baggage Claim Area so Ms. Anderson inquired at American Airlines' Lost Luggage Office regarding the status of flight.

23. Ms. Anderson was informed by the American Airlines Representative that the plane had not yet arrived at the gate. In actuality, American Airlines Flight 1094 had arrived at the gate at 3:28 p.m. and passengers had already begun to exit the aircraft.

24. By approximately 4:15 p.m., Mrs. Kong still had still not been brought to American Airlines' Baggage Claim Area. Now worried, Ms. Anderson went to American Airlines' Wheel Chair Assistance Office, which was operated by defendant Eulen America. Ms. Anderson asked a Eulen America employee for information regarding the location of her mother and asked the employee to page her. This employee, later identified as Mr. Jonathan Oliver ("Mr. Oliver"), told Ms. Anderson that his computer was "down" and he was unable to page

Mrs. Kong, but that the wheelchair passengers had not yet been brought from the gate to American Airlines' Baggage Claim Area by the wheelchair attendants.

25. In fact, Mrs. Kong had not been met at the gate by a wheelchair attendant and was not being transported by a wheelchair attendant to American Airlines' Baggage Claim Area. Prior to the arrival of American Airlines flight 1094, Mr. Abuelgasim Eid ("Mr. Eid"), the Eulen America wheelchair attendant who was assigned to meet Mrs. Kong and escort her to American Airlines' Baggage Claim Area, had informed Mr. Oliver that his portable electronic sign was not working. It was the practice of Eulen America to have the names of the passengers scheduled to have wheelchair assistance on electronic signs on their assigned wheelchairs in order for wheelchair passengers to be able to identify their attendant. Mr. Eid asked Mr. Oliver, who was also at the American Airlines Flight 1094 gate, whether he should go down to American Airlines' Wheelchair Assistance Office and print out a sign with Mrs. Kong's name on it. Mr. Oliver, however, instructed Mr. Eid not to leave the gate area and told him that he should "not worry about it."

26. A videotaped recording of the American Airlines Flight 1094 gate area just prior to the passengers beginning to disembark from the aircraft shows that there were a number of wheelchairs waiting at the gate. All but one of the wheelchair attendants had a sign indicating the name of a passenger needing assistance. The videotaped recording showed that the Eulen America wheelchair attendant assigned to transport Mrs. Kong to American Airlines' Baggage Claim Area had no sign on his wheelchair.

27. The videotape also shows Mrs. Kong exiting the airplane at approximately 4:03 p.m. and entering the gate area looking for a wheelchair with her name on it.

7

28. By approximately 4:30 p.m., Mrs. Kong still had not been transported to American Airlines' Baggage Claim Area. Ms. Anderson, now very worried, sought the aid of a second employee in American Airlines' Wheel Chair Assistance Office. This employee used a computer to confirm that Mrs. Kong was on the flight and that she was scheduled to receive wheelchair assistance. This employee also told Ms. Anderson that they were bringing Mrs. Kong to American Airlines' Baggage Claim Area. However, Mrs. Kong had not been met at the gate by a wheelchair attendant and was not in the care of American Airlines or Eulen America.

29. After again waiting and not seeing her mother, Ms. Anderson sought the aid of an attendant at the National Airport Information Booth across the hall from American Airlines' Baggage Claim Area. Ms. Anderson informed the attendant that her mother was missing and that the American Airlines' personnel were not helping to find her.

30. The Information Booth attendant called American Airlines' ticket counter, but no one answered the phone. The attendant then suggested that Ms. Anderson go up to American Airlines' ticket counter and request assistance from an American Airlines ticket agent.

31. Upon arriving at the ticketing area, Ms. Anderson was confronted with a long line of people waiting to get to the American Airlines' counter. Due to the long line, she asked a Transportation Security Administration ("TSA") agent to help her. The TSA agent took Ms. Anderson to the front of the line at the American Airlines' ticket counter and explained to a ticket agent that Ms. Anderson was unable to locate Mrs. Kong. The American Airlines agent told the TSA officer to "let her wait."

32. After waiting at the American Airlines' ticket counter for approximately 15 minutes, Ms. Anderson again spoke to the ticket agent and requested a pass to go to the gate to see if Mrs. Kong was there.

33. The American Airlines' ticket agent refused to provide Ms. Anderson with a gate pass.

34. After her request for a gate pass was refused, Ms. Anderson asked to speak with an American Airlines manager. The ticket agent told Ms. Anderson that no manager was present. Realizing that she was not going to get any assistance from the American Airlines ticket agent, Ms. Anderson began to frantically search the second floor of National Airport looking for her mother, but to no avail.

35. Ms. Anderson next sought the aid of another TSA agent, who agreed to go to the gate and report back to Ms. Anderson. Upon his return, he informed Ms. Anderson that he was told by a gate agent that Mrs. Kong had been "checked out" to a wheelchair. The TSA agent then accompanied Ms. Anderson back to American Airlines' Baggage Claim Area to look for Mrs. Kong.

36. By 5:05 p.m., Ms. Anderson was extremely worried, so she made a telephone call to American Airlines at its 1-800 Customer Service number and told the operator that she could not locate Mrs. Kong even though she had been told that her mother had been picked up in a wheelchair at the gate. The American Airlines Representative placed Ms. Anderson on hold for approximately 10 minutes. When the American Airlines Representative returned to the telephone, she reported that Mrs. Kong had been picked up in a wheelchair and taken to the lavatory.

37. After speaking with the American Airlines Representative on the telephone, Ms. Anderson then located another wheelchair attendant and asked about her mother. This attendant informed Ms. Anderson that he was waiting for a female attendant to search the ladies bathroom for Mrs. Kong.

38. After waiting in American Airlines' Baggage Claim Area for a few minutes, Ms. Anderson again sought the aid of the attendant at the Airport Information Booth. This time, the attendant locked up the booth and personally went to the gate to see if she could locate Mrs. Kong.

39. Upon her return, the attendant also informed Ms. Anderson that a gate agent had told her that Mrs. Kong was "checked out" in a wheelchair.

40. Rather than continuing to wait, Ms. Anderson located Mr. Oliver and confronted him with the information she had been told about that her mother being picked up by a wheelchair attendant. Mr. Oliver responded that he was waiting for a female attendant in order to search the women's restrooms and was otherwise dismissive to Ms. Anderson.

41. Ms. Anderson then demanded that Mr. Oliver take her to the National Airport Police Station so that she could report her mother as missing.

42. Ms. Anderson arrived at the National Airport Police Station at approximately 6:30 p.m. The airport police immediately began to review surveillance video and quickly determined that Mrs. Kong had exited the American Airlines aircraft at 4:03 p.m.

43. By 7:00 p.m., both physical and videotape searches had begun for Mrs. Kong. Police officers and family members searched for Mrs. Kong throughout the night of May 3, 2013.

44. At approximately 10:30 p.m. on May 3, 2013, the National Airport Police located surveillance footage showing that Mrs. Kong exited the airport terminal building at 4:12 p.m.

45. Thereafter, the National Airport Police located surveillance video that showed Mrs. Kong waiting on a bench outside the National Airport Terminal next to the passenger arrival area and later walking along the George Washington Parkway bicycle path.

46.     Beginning on the morning of May 4, 2013, various police departments, family members and volunteers searched for Mrs. Kong at National Airport and in the vicinity of the airport and the George Washington Parkway bicycle path.

47.     The search for Mrs. Kong continued on May 5, 2013.

48.     On the morning of May 6, 2013, Mrs. Kong's body was found in a wooded area near the George Washington Parkway bicycle path on Gravelly Point, just outside National Airport.

49.     Upon information and belief, Mrs. Kong died of exposure. She was still wearing her jewelry and had money in her purse when her body was located.

**FIRST CAUSE OF ACTION AGAINST DEFENDANTS AMERICAN AIRLINES AND EULEN AMERICA FOR STRICT LIABILITY UNDER THE MONTREAL CONVENTION TREATY**

50.     Plaintiff hereby repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 49 as if set forth herein at length.

51.     At all times herein mentioned, defendant American Airlines was and is a common carrier engaged in the business of transporting passengers for hire by air, by and through its servants, agents and employees, and as such it owned, operated, maintained and controlled a Boeing model 737-800 aircraft, which was operated as American Airlines Flight 1094, as part of decedent Victoria Mary Kong's scheduled international passenger flight from Barbados to Ronald Reagan Washington National Airport on May 3, 2013 (the "subject flight").

52.     On May 3, 2013, Mrs. Kong was a fare paying passenger on the subject flight, engaged in international transportation pursuant to airline tickets on defendant American Airlines for travel between Barbados and National Airport, with an additional stop in Miami, Florida; the tickets were issued in the United States by and for defendant American Airlines, were governed

by the Montreal Convention and provided for transportation between Barbados and the United States, with an agreed stopping place inside the United States and with the ultimate destination of the United States.

53. At all times mentioned herein, defendant American Airlines maintained a place of business in the United States through which the ticket for the subject flight was issued, in that defendant American Airlines had offices in the United States, issued the ticket for the subject flight in the United States and accepted payment from Mrs. Kong for the ticket for the subject flight in the United States.

54. At all times herein mentioned, defendant Eulen America provided wheelchair assistance services for defendant American Airlines at National Airport and as such was an agent of defendant American Airlines.

55. By the terms of the Montreal Convention, defendants American Airlines and Eulen America are presumed liable for the personal injuries suffered by Mrs. Kong in connection with the American Airlines Flight 1094 as a result of any accident on board the aircraft or disembarking from the aircraft.

56. On May 3, 2013, Mrs. Kong suffered severe physical injuries as a result of an accident while disembarking from the subject flight when defendants American Airlines and Eulen America failed to provide wheelchair assistance services to transport Mrs. Kong from the American Airlines aircraft to American Airlines' Baggage Claim Area at National Airport as requested by Ms. Anderson at the time that Mrs. Kong's ticket contract was purchased and agreed to and subsequently confirmed by defendant American Airlines.

57. As a result of the unusual and unexpected failure of defendants American Airlines and Eulen America to provide Mrs. Kong with the requested wheelchair assistance, which

American Airlines agreed to provide, Mrs. Kong sustained severe personal injuries and died on or about May 4, 2013.

58. At all times mentioned herein, the accident suffered by Mrs. Kong while disembarking from American Airlines Flight 1094 was an unexpected and unusual event external to Mrs. Kong and was a link in the chain of causation which ultimately resulted in her death and defendants American Airlines and Eulen America are therefore liable under the applicable provisions of the Montreal Convention for the damages sustained by Mrs. Kong, her daughter, plaintiff Joy Patricia Anderson, her Estate, and her heirs and next of kin as a result of said accident.

59. As a result of the foregoing, plaintiff Joy Patricia Anderson, on her own behalf and as Personal Representative of the Estate of Victoria Mary Kong, Lynn Carol Ransome, Dianne Mary Kong and Cullen John Kong are entitled to recover damages for loss of decedent's earnings, financial support, services, society, love, consortium, companionship, comfort, care, nurture, protection, parental care, advice, guidance, assistance and training, inheritance and/or net estate accumulations of the decedent, survivors' grief and anguish, sorrow, stress, mental suffering and pain and shock, together with the decedent's mental and physical pain and suffering, lost future earnings, medical expenses, loss of enjoyment of life and life's activities, funeral and burial expenses and other damages for which defendants American Airlines and Eulen America are presumed liable.

60. By reason of the foregoing, and under the terms of the Montreal Convention, plaintiff Joy Patricia Anderson, individually and as the Personal Representative of the Estate of Victoria Mary Kong, Lynn Carol Ransome, Dianne Mary Kong and Cullen John Kong are

entitled to recover compensatory damages from defendants American Airlines and Eulen America for their injuries and economic and non-economic losses.

WHEREFORE, plaintiff Joy Patricia Anderson, individually and as Personal Representative of the Estate of Victoria Mary Kong, Lynn Carol Ransome, Dianne Mary Kong and Cullen John Kong demand judgment against defendants American Airlines and Eulen America for compensatory and special damages in amounts according to proof at trial, together with interest, costs and the disbursements of this action and for other such and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, through counsel, requests a trial by jury.

DATED: August 11, 2014        Respectfully submitted,

*[signature]*
William R. Martin
MARTIN & GITNER PLLC
2121 K Street, N.W., Suite 850
Washington, D.C. 20037
Tel: (202) 331-2121
billy.martin@martingitnerlaw.com

OF COUNSEL
Robert J. Spragg
KREINDLER & KREINDLER LLP
750 Third Avenue, 32nd Fl.
New York, NY 10017
Tel.: (212) 687-8181
Fax: (212) 972-9432

Geoffrey P. Gitner
MARTIN & GITNER PLLC
2121 K Street, N.W., Suite 850
Washington, D.C. 20037
Tel: (202) 331-2121
geoff.gitner@martingitnerlaw.com
*Attorneys for Plaintiffs*